HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHILLIP MIGLIO,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED AIRLINES,<br><br>    Defendant. | CASE NO. C13-573RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on Plaintiff's motion for reconsideration and Defendant's motion to dismiss for lack of subject matter jurisdiction. No one requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court DENIES both motions. Dkt. ## 9, 27. The clerk shall TERMINATE the August 30, 2013 motion calendar that the court created to address the motion to dismiss.

## II. BACKGROUND

For purposes of these motions, the court can accept as true the allegations of Plaintiff Phillip Miglio's complaint. He worked in the Seattle area as a baggage handler for Defendant United Airlines ("United"). When he attempted to return to work two weeks after an on-the-job shoulder injury in 2009, United told him that there was no work available to him that would meet the "light duty" restrictions that Mr. Miglio's physician

ORDER – 1

1 recommended. Mr. Miglio's physician recommended shoulder surgery in December 2009, but United delayed approval of the surgery until September 2010.

Mr. Miglio's physician cleared him for regular duty, subject to a four-hours-per-day work restriction, in August 2011. United required him to perform various physical tests before he could return to work. Mr. Miglio reinjured himself during the tests. Although Mr. Miglio claimed he could work subject to some restrictions, United did not find work that would accommodate those restrictions.

Mr. Miglio's physician cleared him to return to work without restriction in August 2012. This time, United required Mr. Miglio to undergo an independent medical examination. The physician who performed the evaluation declared that he could not offer an opinion on Mr. Miglio's fitness for work without receiving documentation of his prior injuries. Mr. Miglio contends that United refused to provide the documentation the physician needed.

United fired Mr. Miglio in September 2012, explaining both that Mr. Miglio had not proven that he was able to return to work and that Mr. Miglio had used up all of the "extended illness status" available to him.

Another physician declared that Mr. Miglio could work without restrictions in November 2012. United refused to reconsider its decision to fire Mr. Miglio.

Mr. Miglio sued United in King County Superior Court for disability discrimination in violation of the Washington Law Against Discrimination ("WLAD"), RCW Ch. 49.60. United removed the case here, invoking the court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

In August 2013, the court issued an order denying Mr. Miglio's motion to remand to King County Superior Court. Aug. 27, 2013 ord. (Dkt. # 25). The sole question relevant to the motion to remand was whether Mr. Miglio had fraudulently joined two Washington-based United employees in order to defeat diversity jurisdiction. The court

ORDER – 2

ruled that he had, concluding that United had proven by clear and convincing evidence that neither employee could be individually liable under the WLAD.

Now before the court are two motions. Mr. Miglio asks the court to reconsider the August 27 order and remand this action to King County Superior Court. Alternatively, he asks the court to certify the August 27 order for an interlocutory appeal. United, for its part, has moved to dismiss this action for lack of subject matter jurisdiction. United contends that the federal Railway Labor Act ("RLA") preempts Mr. Miglio's WLAD claims because those claims require interpretation of the collective bargaining agreement ("CBA") between Mr. Miglio's union and United.

### III.  ANALYSIS

**A.  Motion for Reconsideration**

Motions for reconsideration are "disfavored," and the court will deny one unless a party shows "manifest error" in the prior order or points to "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence" that warrant a different result. Local Rules W.D. Wash. LCR 7(h)(1).

Mr. Miglio points neither to new facts nor to new legal authority; he argues only that the court erred when it ruled that employees who merely carry out the discriminatory decisions of their supervisors cannot be individually liable under the WLAD. The court disagrees, for the reasons stated in the August 27 order as well as the reasons stated here.

Mr. Miglio renews his focus on the language of the WLAD, attempting to parse the holding in *Brown v. Scott Worldwide Paper Co.*, 20 P.3d 921 (Wash. 2001). The court already addressed *Brown* in the August 27 order. Now, Mr. Miglio points out that the *Brown* court observed that the WLAD makes an "employer" liable for various wrongful acts, including disability discrimination. RCW 49.60.180(3). It further defines an "employer" as "any person acting in the interest of an employer, directly or indirectly . . . ." RCW 49.60.040(11). Mr. Miglio asserts, as he did unsuccessfully when

ORDER – 3

he moved to remand, that since the two individual employees to whom he pointed were acting in the interest of United when they carried out the discriminatory decisions of their Chicago-based superiors, they are liable. His assertion turns the statute upside down. People acting in the interest of an employer can be individually liable via the WLAD, *but only if they violate the WLAD*. Putting aside a discrimination claim invoking a disparate impact theory, a plaintiff claiming employment discrimination must prove intentional discrimination. *E-Z Loader Boat Trailers v. Travelers Indem. Co.*, 726 P.2d 439, 444 (Wash. 1986); *see also Hegwine v. Longview Fibre Co.*, 172 P.3d 688, 697 (Wash. 2007) (noting that "burden of persuasion always remains with the employee to show intentional discrimination"). An employee who merely carries out the instructions of her superiors lacks the intent necessary for discrimination. Instead, her intent is to carry out her superior's instructions. There may be instances in which an employee carrying out a superior's instructions shares the superior's discriminatory intent, but as the court noted in the August 27 order, this is not such a case.

Like the *Brown* court, Mr. Miglio also points to RCW 49.60.220, which makes it unlawful to "aid, abet, encourage, or incite the commission of any unfair practice" proscribed by the WLAD. He ignores that aiding and abetting, within the meaning of the WLAD, requires that the "individual in question has engaged in a transaction in which he would not otherwise have engaged . . . for the purpose of assisting . . . discrimination." *Rudy v. Hollis*, 500 P.2d 97, 101 (Wash. 1972); *see also Woods v. Graphic Comm'ns*, 925 F.2d 1195, 1200 n.3 (9th Cir. 1991) ("A violation of [RCW 49.60.220] requires more than mere knowledge that discrimination has occurred. To violate the statute, a party must participate in a discriminatory activity for the *purpose* of discriminating.") (emphasis in original). An employee who merely carries out the discriminatory instructions of a superior is not liable for aiding and abetting discrimination.

ORDER – 4

Finally, Mr. Miglio attempts to liken his claims to the claims of the employee in *Raymond v. Pac. Chem.*, 992 P.2d 517, 523 (Wash. Ct. App. 1999), one of the two appeals that the *Brown* court resolved.  The *Raymond* court was not considering a claim against an employee who had merely carried out the instructions of her superiors, it was considering a claim against supervisors "who [had] commit[ted] age discrimination." *Id.* In reversing *Raymond*, the *Brown* court had no reason to consider whether an employee who merely follows instructions has committed discrimination.  Indeed, Mr. Miglio has presented no case in which a subordinate employee was held liable under the WLAD merely for following her superior's instructions.

For these reasons, and for the reasons stated in the August 27 order, the court declines to reconsider that order.  The court also declines to certify that order for immediate appeal.  The court does not believe that there is "substantial ground for difference of opinion" as to the controlling question of law that that Mr. Miglio presents – whether the WLAD assigns liability to employees who merely carry out the instructions of their superiors.  *See* 28 U.S.C. § 1292(b) (guiding district court's discretion in certifying an otherwise non-appealable interlocutory order for immediate appeal).  Mr. Miglio's view of the WLAD would place employees with no discriminatory intent in an unconscionable bind: either refuse to carry out the discriminatory instructions of their superiors and face adverse consequences, or follow those instructions and face liability for discrimination.  Neither the WLAD, the Washington Supreme Court's interpretation of it in *Brown*, nor any other authority Mr. Miglio has cited supports foisting that Hobson's choice on Washingtonian workers.

**B.    Motion to Dismiss**

The sole issue that United's motion to dismiss properly raises is that the RLA preempts Mr. Miglio's WLAD claim.  United did not contend that the court should

ORDER – 5

compel arbitration of this case in accordance with the CBA.  United also did not contend that Mr. Miglio waived, via the CBA, his right to bring a WLAD suit.

The RLA, which Congress extended to cover the airline industry in 1936, is designed to stabilize labor-management relations via a comprehensive dispute resolution process.  *Espinal v. NW Airlines*, 90 F.3d 1452, 1455-56 (9th Cir. 1996).  In particular, it "establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes."  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (quoting 45 U.S.C. § 151a).  So-called "major disputes" are those over the formation of CBAs or efforts to secure them, whereas "minor disputes" are those over the interpretation or application of agreements covering rates of pay, rules, or working conditions. *Id.* at 252-253.

The RLA preempts state-law causes of action to resolve minor disputes.  *Norris*, 512 U.S. at 253.  The difficulty in applying this straightforward proposition is in distinguishing minor disputes – *i.e.*, suits arising out of an interpretation of a CBA – from other disputes.  Courts confront essentially the same issue in considering the preemptive effect of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  *Norris*, 512 U.S. at 260, 263 n.9.

In *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007), the court (addressing the LMRA) established a two-step preemption inquiry.  First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA."  *Id.* at 1059.  If the right arises solely from the CBA, the claim is preempted.  *Id.*  If the right does not arise solely from the CBA, a court must consider whether the right is "substantially dependent on the terms of a CBA."  *Id.* at 1060 (internal quotation omitted).  A minor dispute within the scope of the RLA is one that depends substantially on the terms of a CBA.  *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999).

ORDER – 6

There is no serious dispute that Mr. Miglio's WLAD disability discrimination claim is one based on rights conferred by Washington law, not any CBA; but there is also no serious dispute that his WLAD claim at least implicates a CBA. Although his complaint does not mention the CBA between United and his union, he cannot avoid it. For example, he admits that one of the reasons United offered for terminating him was that he had "been on 'extended illness status' for the maximum period of time proscribed by company policy." Compl. ¶ 35. "Extended illness status," in turn, is a term of art from the CBA.[1] United's contention is that it fired Mr. Miglio not because he had a disability, but because the CBA dictated his firing because he had exhausted his extended illness status. Similarly, United contends that it is the CBA that dictates whether it is Mr. Miglio or United who was responsible for providing additional documentation to the physician who performed the 2012 independent medical examination. Moreover, it was the CBA, in United's view, that prevented it from giving Mr. Miglio the modified duty assignments that his various injuries required.

In deciding whether a state law right is "substantially dependent" on the terms of a CBA at step two of the *Burnside* analysis, the court must determine whether it can resolve the dispute by "looking to" rather than "interpreting" the CBA. 491 F.3d at 1053. That a CBA bears on the resolution of a state-law claim is insufficient to preempt the claim, it must be necessary to resolve competing interpretations of the CBA. Take, for example, United's contention that the CBA required it to terminate Mr. Miglio because

---

[1] United provided the CBA in connection with its motion to dismiss. Dziepak Decl. (Dkt. # 10), Ex. A. Curiously, United styled its motion to dismiss as one challenging the court's subject matter over this dispute. Whether the RLA preempts Mr. Miglio's state law claims or not, the court has subject matter jurisdiction. A preempted claim is not one over which the court lacks subject matter jurisdiction, it is simply a claim for which the court cannot grant relief. United's motion is, properly speaking, a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In resolving a Rule 12(b)(6) motion, a court typically cannot consider evidence beyond the four corners of a complaint, although it may rely on a document to which the complaint refers if it is central to the claim presented and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court assumes, for purposes of this motion, that Mr. Miglio's complaint implicitly incorporates the CBA.

ORDER – 7

he had exhausted his "extended illness status." Mr. Miglio cannot dispute United's interpretation of the CBA, to do so would be to assert a preempted dispute. But to pursue his WLAD claim successfully, he does not have to dispute United's interpretation of the CBA. He could concede that the CBA mandated his termination and nonetheless contend that United terminated him because of his disability in violation of Washington law. To the extent that United believes that compliance with the CBA is a defense to a WLAD claim, it is either mistaken or it has offered no authority to support that assertion. Imagine, for example, a CBA dictating that "any employee with a disability will be fired." If United followed that CBA, it would violate Washington law.

At this stage of the litigation, United has pointed to no dispute over the interpretation of the CBA that will *necessarily* arise in the course of this litigation. To the extent that such a dispute arises, which will presumably occur only if Mr. Miglio decides to argue with United's interpretation of the CBA, United is free to assert that the RLA preempts that dispute. But it is entirely possible for Mr. Miglio to litigate this suit in a way that does not require interpretation of the CBA. For that reason, the court declines to dismiss his WLAD claim.

Before concluding, the court observes (as did Mr. Miglio) that United presented a new argument in its reply brief. It invoked *Miller v. AT&T Network Sys.*, 850 F.2d 543, 548 (9th Cir. 1988), and its three-part inquiry for assessing preemption of state law claims that implicate the terms of a CBA. The court does not suggest that United would have prevailed had it made this argument in its initial motion. It merely rules that United was required to raise this issue in its initial motion, rather than in its reply brief.

### IV.   CONCLUSION

For the reasons stated above, the court DENIES both Mr. Miglio's motion for reconsideration and United's motion to dismiss. Dkt. ## 9, 27. The clerk shall

ORDER – 8

TERMINATE the August 30, 2013 motion calendar that the court created to address the motion to dismiss.

DATED this 17th day of March, 2014.

_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9